UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 17-23820-CIV-GAYLES/OTAZO-REYES

SEACOAST 5151 CONDOMINIUM
ASSOCIATION,

        Plaintiff.

v.

GREAT AMERICAN INSURANCE
COMPANY OF NEW YORK,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on Plaintiff's Memorandum Challenging Defendant's Withheld and Redacted Documents Identified in Plaintiff's Challenges to Defendant's Amended Privilege Log ("Plaintiff's Memorandum") filed on August 10, 2018. On August 24, 2018, Defendant filed Great American Insurance Company of New York's Opposition to Plaintiff's Memorandum which was replied to by Plaintiff on August 31, 2018. Previously, this Court appointed the undersigned, former United States Magistrate Ted E. Bandstra, as Special Master to resolve all challenges to Defendant's privilege claims as set forth in Plaintiff's Filing of Challenges to Defendant's Amended Privilege Log (D.E. 31) filed on May 22, 2018. Accordingly, the undersigned conducted a telephone conference with counsel and requested that the issues involved in these challenges be briefed with legal memoranda as identified above.

On September 7, 2018, the undersigned heard oral argument of counsel on issues addressed herein at the JAMS Resolution Center in Miami, Florida. Following careful review of Great

1

American's Amended Privilege Log, an *in camera* review of the documents listed thereon, case law cited by the parties, and oral argument of counsel, it is hereby RECOMMENDED that Plaintiff's Challenges to Defendant's Amended Privilege Log be resolved as follows:

a. that Seacoast's challenge to Great American's assertions of the attorney-client privilege be GRANTED with respect to coverage counsel so that Great American shall produce all documents withheld on the basis of the attorney-client privilege created prior to December 27, 2016, with the exception of coverage opinions produced by William Wilson, Esq. on or about March 9, 2016 and November 22, 2016; and

b. that Seacoast's challenge with respect to reserve and subrogation information be DENIED for the reason that all such information is not relevant to issue involved in this case.

## BACKGROUND

This matter involves three separate insurance claims by Seacoast for damages that purportedly occurred between September-December 2015 at the condominium property located at 5151 Collins Avenue, Miami Beach, Florida (the "Property"). The three separate insurance claims involve (1) water/mold damages related to the HVAC system with a purported date of loss of September 15, 2015 (the "HVAC claim"); (2) fire damage related to a car fire in the parking lot of the Property allegedly occurring on October 7, 2015 (the "fire claim"); and damages related to the explosion of a hot water boiler allegedly occurring on November 30, 2015 (the "boiler claim").

Seacoast reported these insurance claims to Great American in October and December 2015. Great American then began investigating these claims which included inspections at the Property in October and early December 2015. Great American determined soon thereafter that there might be coverage issues regarding the scope of damages at the Property and potential coinsurance issues regarding one or more of these claims. Consequently, Great American decided

to retain outside counsel at Mound Cotton Wollan & Greengrass, LLP regarding rights and obligations under the subject policy as well as possible coinsurance issues. William Wilson, Esq. at Mound Cotton was retained by Great American in or about March 2016 and assisted Great American in the investigation of the claims and by later authoring a written coverage opinion in late November 2016 shortly before Great American denied Seacoast's HVAC claim on December 27, 2016. Great American made payment to Seacoast on the fire and boiler claims on or about that same date.

On October 18, 2017, Seacoast filed suit against Great American alleging breach of contract relating to the denial of the HVAC claim and underpayment on the fire and boiler claims. Responding to Seacoast's written discovery requests, Great American produced numerous documents but withheld other documents on the basis of the work product doctrine and attorney-client privilege relating to communications with its legal counsel before and after Seacoast denied the HVAC claim. Great American also withheld documents reflecting reserve amounts set aside for the three insurance claims and possible subrogation of these claims which great American withheld on the basis of relevancy. All documents not produced or redacted were listed on Great American's original privilege log produced in early 2016.

Following discussions between counsel at the direction of the Court, Great American filed an Amended Privilege Log on April 28, 2016 reducing the number of documents still in dispute to 165 different sets of documents withheld or redacted under the work product doctrine and/or the attorney-client privilege, business confidentiality privilege and relevancy grounds.

On June 22, 2018, this Court appointed the undersigned as Special Master to address Seacoast's challenges to Great American's remaining privilege and relevancy claims as listed on Great American's Amended Privilege Log.

## ANALYSIS

Great American's Amended Privilege Log lists 165 documents not produced or produced with redactions consisting primarily of two types of documents. First, Great American has withheld documents or portions thereof which make reference to communications with Great American's coverage counsel, William Wilson, prior to Great American's decision to deny coverage for Seacoast's HVAC claim asserting work product and the attorney-client privilege. Second, Great American has withheld documents showing reserve amounts set aside by Great American on all three insurance claims, and documents containing subrogation information on the grounds that these documents are not relevant to issues in this case. While Great American initially opposed production of documents relating to communications with counsel on both work product and attorney-client grounds, Great American is now opposing production of these documents solely on the basis of the attorney-client privilege. Similarly, while initially opposing production of documents containing reserve and subrogation information on commercial confidentiality and relevancy grounds, Great American is not limiting its argument to the absence of relevancy for reserve and subrogation documents.

A.  <u>Attorney-Client Privilege</u>

In federal diversity actions such as the current case, Florida law governs the application of the attorney-client privilege. *Stephens v. Dairyland Ins. Co.*, 2013 WL 1810805, at *1 (M.D. Fla. 2013). This privilege "protects communications between a client and his attorney made in confidence for the purpose of securing legal advice or assistance." *Id.* The purpose of the attorney-client privilege is to "encourage full and frank communications between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Worley v. Central Fla. Young Men's Christian Ass'n, Inc.*, 2017 WL

1366126, at *5 (Fla. App. Apr. 13, 2017). This privilege is not, however, unlimited. Because the privilege impedes the full and free discovery of the truth, the attorney-client privilege must be narrowly construed. *Connecticut Indemnity Co. v. Carrier Haulers, Inc.*, 197 F.R.D. 564, 572 (W.D.N.C. 2000), citing *Trammel v. United States,* 445 U.S. 40, 50 (1950). Moreover, when the claim of attorney-client privilege is made by a corporation, the claim is subject to a "heightened level of scrutiny." *Millinazzo v. State Farm Ins. Co.,* 247 F.R.D. 691, 689-90 (S.D. Fla. 2007); *Bermuda Dunes Private Residences Condominium Ass'n, Inc. v. Empire Indemnity Ins. Co.*, 2017 WL 7731862, at *1 (M.D. Fla. Aug. 18, 2017).

Moreover, when the corporation asserting attorney-client privilege is an insurance company, the requirements and burden on the carrier become even more stringent. Pursuant to well-settled law in this circuit, one of the critical elements in determining whether the attorney-client privilege applies is determining the point in time when an insurance company reasonably anticipates litigation with its insured. Thus, when an insurance company objects to the production of documents pursuant to the attorney-client privilege, that privilege "only attaches when an attorney performs acts for an insurer in his professional capacity and in anticipation of litigation." *Millinazzo, 247 F.R.D.* at 697; *Atriums of Palm Beach Condominium Ass'n, Inc. v. QBE Ins. Co.*, 2009 WL 10667478, at * 3 (S.D. Fla. June 17, 2009); *1550 Brickell Associates. V. QBE Ins. Co.*, 253 F.R.D. 697, 699 (S.D.Fla. 2008); *Salzbach v. Hartford Ins. Co. of the Midwest*, 2013 WL 12098763, at *3 (M.D. Fla. April 19, 2013).

The above case law makes clear that determining when Great American reasonably anticipated litigation with Seacoast is critical in determining the application of the attorney-client privilege with respect to documents withheld in this case. In *Millinazzo, supra,* Magistrate Judge Torres focused on the date the insurer denied the claim at issue, and held that only those

5

documents dated after the claim was denied were protected by the attorney-client privilege. 247 F.R.D. at 697. Other federal courts in the Southern District of Florida have followed the same general rule. For example, in *Atriums of Palm Beach, supra,* Magistrate Judge Johnson performed a similar temporal analysis and granted the plaintiff's motion to compel documents withheld by the defendant insurance company under a claim of attorney-client privilege explaining that:

> As for [the insurer's] attorney-client claims, these suffer the same fate [as its work product objections]. As previously noted, in an insurance context, the attorney-client privilege applies only when the attorney performs acts for an insurer in his professional capacity in anticipation of litigation. [Citation omitted]. As with the work product doctrine, the burden of establishing the attorney-client privilege rests on the party asserting the privilege. *Deason,* 632 So.2d at 1383. Inasmuch as the documents identified on the privilege log were created, according to Defendant itself, a full three months before litigation was anticipated, the subject documents could not have been prepared by an attorney performing acts for an insurer in his professional capacity in anticipation of litigation as required for the attorney-client privilege to attach.

*Id.* at 5 (internal citations omitted).

Using the same analysis, the District Court in *Asher Trust v. Lincoln National Life Ins. Co.,* 2014 WL 12461357, at *2 (S.D. Fla. Aug. 26, 2014), explained:

> Generally, the burden is on the party claiming the attorney-client privilege or protection under the work product doctrine [Citation omitted]. However, in the insurance context, there is a rebuttable presumption that documents prepared prior to a claim's denial were not created in anticipation of litigation, and conversely, those created after were. *See, e.g., AIG Centennial Ins. Co. v. O'Neill,* 2010 WL 4116555, *10 (S.D. Fla. Oct.18, 2010). An insurance carrier may rebut the presumption by "specific evidentiary proof of objective facts that a reasonable anticipation of litigation existed when the document was produced." *See Millinazzo,* 247. F.R.D. at 701 (citing *Harper v. Auto-Owners Ins. Co.,* 138 F.R.D. 655, 663 (S.D. Ind. 1991)). "Defining precisely what an adequate showing would consist of is best left to case-by-case development." *Harper,* 138 F.R.D. at 663, n. 4. But generally, "the insurer must demonstrate the connection to possible litigation concretely enough to assure the court that it is not simply trying to immunize from discovery its routine claims processing material. *See Royal Bahamian,* 268 F.R.D. at 698.

Reviewing the documents withheld here or redacted on the basis of the attorney-client privilege, the undersigned finds that almost all of these documents reflect only preliminary communications with counsel well in advance of Great American's decision to deny the HVAC claim so that they are not protected by the attorney-client privilege. Coverage counsel William Wilson was first retained on or about January 11, 2016—only weeks after the claims were filed by Seacoast and almost a full year before Great American denied the HVAC claim on December 27, 2016. Following his retention, Great American had frequent telephone and email contacts with Mr. Wilson to provide him information on the three claims and the progress of Great American's investigation of those claims. Mr. Wilson provided input into that investigation and assisted Great American in aspects of that investigation relating to information he would need to prepare a coverage opinion later that year. No documents listed on Great American's Amended Privilege Log contain "specific proof of objective facts" that Great American anticipated litigation with Seacoast on any of the three claims prior to the denial of the HVAC claim with the possible exception of the written coverage opinion provided by Mr. Wilson dated November 22, 2016. Even then, Great American did not deny the HVAC claim until December 27—the date certain that Great American could reasonably anticipate a lawsuit with Seacoast.

Applying the general rule discussed above, and following an *in camera* review of the documents at issue here, the undersigned recommends that all documents withheld or redacted by Great American created prior to its decision to deny the HVAC claim, i.e., December 27, 2016, be produced in their entirety with the exception of Mr. Wilson's preliminary coverage opinion (apparently expressed by email) dated March 9, 2016, and the written coverage opinion dated November 22, 2016. Seacoast's counsel agrees with Great American's withholding hose opinions even though they predate the claim denial decision. The undersigned also recommends that Great

American be allowed to withhold any documents created after the issuance dates of those coverage opinions that summarize or make specific reference to those opinions which may be found in the subject documents.

B. <u>Relevancy Objections to Reserve and Subrogation Information</u>

Great American also lists a number of documents redacted or fully withheld from production which contain reserve and/or subrogation information for one or more of Seacoast's claims. Great American argues that reserve and subrogation information generated throughout its investigation is irrelevant to any coverage issues involved in this case—particularly in the absence of a bad faith allegation by Seacoast. Seacoast disagrees with Great American's relevancy objection based primarily on "severe underpayment issues" on the two claims paid by Great American prior to the filing of this lawsuit.

Relevancy is typically not a "privilege" that can be asserted as a basis for nonproduction of documents even with the listing of those documents on a party's privilege log. Nevertheless, Great American has done so here with respect to reserve information arguing that such information is not discoverable because the setting of reserve amounts on claims is simply a regulatory function required by Florida law that takes into consideration numerous factors such as the perceived value of an insured's claim, the probability of an adverse judgment, the jurisdiction, and fees and expenses that may be incurred in defending a claim. *See State of West Virginia ex rel Erie Property & Cas. Co. v. Massone*, 625 S.E.2d 355 (W.Va. 2005). Great American further argues that the setting of reserves is nothing more "than a carrier's compliance with regulations compelling the maintenance of funds to meet potential liabilities" and constitutes nothing more than a "preliminary estimate of potential liability" that may or may not take into account all of the factual and legal components of a particular case.

Reviewing cited authority, the undersigned agrees with Great American that reserve information is generally not discoverable in insurance coverage cases absent an allegation of bad faith by the insured. Florida courts have repeatedly held that reserve information is not subject to discovery in a first party breach of contract action because it "is irrelevant to the determination of coverage. . . ." *Viking Yacht Co. v. Affiliated FM Ins. Co.,* 2008 WL 8715540, at *3 (S.D. Fla. Feb. 7, 2008). Explaining why reserve information is generally not discoverable in a coverage dispute, the court in *1550 Brickell Associates v. QBE Ins. Corp. supra,* stated that "an insurer's ball park assessment of its potential maximum liability of a claim would appear to have little relevance to whether Plaintiff's damages are covered by the insurance policy and whether Defendant breached the policy by failing to pay for covered losses." 2011 WL 9506, at *3. The court went on to explain:

> Even assuming evidence of Defendant's indemnity reserves is relevant, there exists a real danger such information would prejudice defendant and potentially mislead the jury. The Court is not convinced the jurors would not equate Defendant's increasing reserve amounts with admissions of coverage. It could tend to inject a bad faith element into a simple breach of contract action. In addition, there is nothing in the [insurer's in-house adjuster's] reports that explains the basis for the reserve calculations or why any changes in the amounts were made. Thus, there is significant risk that evidence of Defendant's indemnity reserves would confuse the issues and mislead the Jury.

*Id.* See also *Dade County Fed. Credit Union v. Cumis Ins. Soc'y, Inc.,* 2011 WL13100237, at *3 ("The majority rule in cases involving first-party claims that do not include allegations of bad faith is that reserve information is irrelevant to a determination of coverage and /or may be protected by the attorney-client privilege or work product doctrine and, therefore, is not discoverable.").

Seacoast offers no Florida law to support its tenuous position that reserve information might somehow be relevant to the coverage issues or lead to the discovery of admissible evidence.

9

Thus, the undersigned recommends that Seacoast's request for documents containing reserve information be denied.

Finally, Seacoast challenges Great American's withholding of subrogation documents on relevancy grounds. Specifically, Seacoast is challenging Great American's redaction of all subrogation information in its possession including its communications with subrogation counsel during the investigation of claims involved in this case.

Great American opposes the production of subrogation information in its file on relevancy grounds arguing that there are no subrogation issues raised in this single-count breach of contract case. Great American explains that it retained subrogation counsel to explore the possibility of subrogation of one or more of Seacoast's claims, and that a separate subrogation action was later filed by outside subrogation counsel in connection with damages caused as a result of a car fire in the parking garage of the insured premises. Great American has produced for Seacoast a copy of the complaint filed in that action. Great American maintains that all other information concerning subrogation and its communications with its subrogation counsel is either irrelevant or protected by the attorney-client privilege.

Seacoast's initial challenge to Great American's withholding of documents listed in the Amended Privilege Log make no reference to Great American's subrogation information including communications with its subrogation counsel. Seacoast's later reply memorandum does challenge Great American's relevancy argument on the grounds that relevancy is typically a trial objection and not a ground for nonproduction during discovery. Seacoast argues that Great American has offered nothing to show that subrogation documents are not discoverable other than to argue that this is not a subrogation case.

Reviewing the subrogation information *in camera* and considering the attorney-client privilege and relevancy objections asserted by Great American, the undersigned finds that Seacoast makes no showing of relevancy which would compel the production of this information at this time. Clearly, this is not a subrogation case and any information relating to subrogation has no relevancy to the claims at issue here. For this reason, the undersigned recommends that Seacoast's challenge to the nonproduction of this information also be denied.

### Summary

For all of the foregoing reasons, the undersigned RECOMMENDS:

a. that Seacoast's challenge to Great American's assertions of the attorney-client privilege be GRANTED so that Great American be required to produce all documents withheld on the basis of the attorney-client privilege dated or created prior to December 27, 2016, with the exception of coverage opinions given or produced by William Wilson, Esq. on or about March 9, 2016 and November 22, 2016; and

b. that Seacoast's challenge with respect to reserve and subrogation information be DENIED for the reason that all such information is not relevant to issues involved in this case.

SUBMITTED to the Court this 15th day of September 2018.

Ted E. Bandstra, Special Master

cc: Craig M. Greene, Esq.
    Laura M. Farrant, Esq.